UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

```
EVELYN GOMES,                     :
          Plaintiff,             :
                                 :
      v.                         :      CA 08-233 S
                                 :
MICHAEL J. ASTRUE, Commissioner, :
Social Security Administration,  :
          Defendant.             :
```

**REPORT AND RECOMMENDATION**

David L. Martin, United States Magistrate Judge

This matter is before the Court on the request of Plaintiff Evelyn Gomes ("Plaintiff") for judicial review of the decision of the Commissioner of Social Security ("the Commissioner"), denying Disability Insurance Benefits ("DIB"), under §§ 205(g) and 1631(c)(3) of the Social Security Act, as amended, 42 U.S.C. §§ 405(g) and 1383(c)(3) ("the Act").  Plaintiff has filed a motion to reverse the Commissioner's decision or, alternatively, remand the matter for further administrative proceedings.  Defendant Michael J. Astrue ("Defendant") has filed a motion for an order affirming the decision of the Commissioner.

This matter has been referred to me for preliminary review, findings, and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B).  For the reasons set forth herein, I find that the Commissioner's decision that Plaintiff is not disabled is supported by substantial evidence in the record.  Accordingly, based on the following analysis, I recommend that Defendant's Motion for an Order Affirming the Decision of the Commissioner (Document ("Doc.") #9) ("Motion to Affirm") be granted and that Plaintiff's Motion to Reverse the Decision of the Commissioner (Doc. #8) ("Motion to Reverse") be denied.

## Facts and Travel

Plaintiff was born in 1961. (Record ("R.") at 41) She completed the twelfth grade, (R. at 59), and has past relevant work as a school secretary, (R. at 23, 55, 465).

On February 10, 2004, Plaintiff filed an application for DIB, alleging disability since October 21, 2003, due to back pain, gastroesophageal reflux disease ("GERD"), depression, and anxiety. (R. at 16-17, 33, 54) The application was denied initially, (R. at 14, 29), and on reconsideration, (R. at 14, 30), and a timely request for a hearing by an Administrative Law Judge ("ALJ") was filed, (R. at 14, 40). Plaintiff, represented by counsel, appeared and testified at hearings held on November 2, 2006, March 7, 2007, and September 19, 2007. (R. at 14, 395, 400-10, 422-43, 448-50) An impartial medical expert ("ME") also testified at the hearings, (R. at 14, 395-400, 411-15, 448-54, 455-56, 465-67), and an impartial vocational expert ("VE") testified at the third hearing, (R. at 14, 413-15). In an October 1, 2007, decision, the ALJ found that Plaintiff was not disabled within the meaning of the Act and, therefore, not entitled to a period of DIB. (R. at 14-24) The Appeals Council denied Plaintiff's request for review, (R. at 6-8), thereby rendering the ALJ's opinion the final decision of the Commissioner, (R. at 6). Thereafter, Plaintiff filed this action for judicial review.

## Issue

The issue for determination is whether substantial evidence supports the Commissioner's decision that Plaintiff is not disabled within the meaning of the Act.

## Standard of Review

The Court's role in reviewing the Commissioner's decision is limited. Brown v. Apfel, 71 F.Supp.2d 28, 30 (D.R.I. 1999). Although questions of law are reviewed *de novo*, the

Commissioner's findings of fact, if supported by substantial evidence in the record,[1] are conclusive.  Id. (citing 42 U.S.C. § 405(g)).  The determination of substantiality is based upon an evaluation of the record as a whole.  Id. (citing Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991)("We must uphold the [Commissioner's] findings ... if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion.")(second alteration in original)).  The Court does not reinterpret the evidence or otherwise substitute its own judgment for that of the Commissioner.  Id. at 30-31 (citing Colon v. Sec'y of Health & Human Servs., 877 F.2d 148, 153 (1st Cir. 1989)).  "Indeed, the resolution of conflicts in the evidence is for the Commissioner, not the courts."  Id. at 31 (citing Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)(citing Richardson v. Perales, 402 U.S. 389, 399, 91 S.Ct. 1420, 1426 (1971))).

## Law

To qualify for DIB, a claimant must meet certain insured status requirements,[2] be younger than 65 years of age, file an application for benefits, and be under a disability as defined by the Act.  See 42 U.S.C. § 423(a).  The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental

---

[1] The Supreme Court has defined substantial evidence as "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 217 (1938)); see also Brown v. Apfel, 71 F.Supp.2d 28, 30 (D.R.I. 1999)(quoting Richardson v. Perales, 402 U.S. at 401).

[2] The ALJ found that Plaintiff met the insured status requirements of the Act and had acquired sufficient quarters of coverage to remain insured through December 31, 2008.

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ...."  42 U.S.C. 423(d)(1)(A).  A claimant's impairment must be of such severity that she is unable to perform her previous work or any other kind of substantial gainful employment which exists in the national economy.  See 42 U.S.C. § 423(d)(2)(A).  "An impairment or combination of impairments is not severe if it does not significantly limit [a claimant's] physical or mental ability to do basic work activities."[3]  20 C.F.R. §§ 404.1521(a) (2009).  A claimant's complaints alone cannot provide a basis for entitlement when they are not supported by medical evidence.  See Avery v. Sec'y of Health & Human Servs., 797 F.2d 19, 20-21 (1st Cir. 1986); 20 C.F.R. § 404.1528(a) (2009).

The Social Security regulations prescribe a five-step inquiry for use in determining whether a claimant is disabled.  See 20 C.F.R. § 404.1520(a) (2009); see also Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987); Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001).  Pursuant to that scheme, the Commissioner must determine sequentially: (1) whether the claimant is presently engaged in substantial gainful work activity; (2) whether she has a severe impairment; (3) whether her impairment meets or equals

---

[3] The regulations describe "basic work activities" as "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. § 404.1521(b) (2009).  Examples of these include:

> (1)  Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2)  Capacities for seeing, hearing, and speaking;
> (3)  Understanding, carrying out, and remembering simple instructions;
> (4)  Use of judgment;
> (5)  Responding appropriately to supervision, co-workers and usual work situations; and
> (6)  Dealing with changes in a routine work setting.

Id.

one of the Commissioner's listed impairments; (4) whether she is able to perform her past relevant work; and (5) whether she remains capable of performing any work within the economy.  See 20 C.F.R. § 404.1520(b)-(g).  The evaluation may be terminated at any step.  See Seavey, 276 F.3d at 4.  "The applicant has the burden of production and proof at the first four steps of the process.  If the applicant has met his or her burden at the first four steps, the Commissioner then has the burden at Step 5 of coming forward with evidence of specific jobs in the national economy that the applicant can still perform."  Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001).

### ALJ's Decision

Following the familiar sequential analysis, the ALJ in the instant case made the following findings: that Plaintiff had not engaged in substantial gainful activity since October 21, 2003, her alleged onset date, (R. at 16); that her depression and anxiety were "severe" within the meaning of the regulations, (id.), but her back pain and GERD were not "severe," (R. at 17); that her claimed impairments, either singly or in combination, did not meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, (R. at 18); that the degree of limitation alleged by Plaintiff was not supported by the record, (R. at 21-22); that Plaintiff retained the residual functional capacity ("RFC") to perform work at all exertional levels, but she had the nonexertional limitations of 1) a moderate impairment of her ability to concentrate and persist at tasks, 2) a moderate impairment of social interactions, and 3) a moderate impairment of her ability to tolerate ordinary work pressure, (R. at 20); that Plaintiff was no longer able to perform her past relevant work as a school secretary, (R. at 23); that, considering Plaintiff's age, education, work experience, and RFC, and based on the testimony of the VE, there were jobs which existed in

significant numbers in the national economy which Plaintiff could perform, (R. at 23); and that, therefore, Plaintiff had not been under a disability, as defined in the Act, from October 21, 2003, the alleged onset date, through the date of the ALJ's decision, (R. at 24).

**Errors Claimed**

Plaintiff alleges that: (1) the ALJ's mental RFC findings are not supported by substantial evidence; and (2) the ALJ's credibility findings are not supported by substantial evidence.

**Discussion**

I.   **The ALJ's assessment of Plaintiff's mental residual functional capacity is supported by substantial evidence.**

The ALJ found that Plaintiff's depression and anxiety related disorders were severe impairments, but that she retained the RFC for work at all exertional levels.  (R. at 16, 20)  The ALJ also found that Plaintiff had the non-exertional limitations of a moderate impairment of her ability to concentrate and persist at tasks which limited her to simple, repetitive tasks over an eight-hour work day with appropriate breaks every two hours, a moderate impairment of social interaction such that she was limited to object-oriented tasks involving minimal interaction with the public and coworkers, and a moderate impairment of her ability to tolerate ordinary work pressure. (R. at 20)  Plaintiff challenges the ALJ's mental RFC findings as unsupported by substantial evidence in the record. See Plaintiff's Memorandum in Support of Her Motion to Reverse the Decision of the Commissioner ("Plaintiff's Mem.") at 9-10.

Plaintiff argues that the opinions of the non-examining reviewing physicians cannot constitute substantial evidence in support of the ALJ's RFC findings in light of the fact that the ALJ improperly afforded less probative weight to the opinions of Plaintiff's treating sources.  See id. at 10.  Plaintiff relies

on the opinions of Francisco Gutierrez, M.D. ("Dr. Gutierrez"),
and Deborah Saboya, Licensed Social Worker ("Ms. Saboya"), see
id., specifically their assessments of Plaintiff's limitations as
ranging from moderately severe to severe, (R. at 336-43).
Instead, the ALJ afforded significant probative weight to the
assessments of the non-examining reviewing sources, Susan Diaz
Killenberg, M.D. ("Dr. Killenberg"), (R. at 107-39), and J.
Stephen Clifford, Ph.D. ("Dr. Clifford"), (R. at 237-55).  The
ALJ also relied on the testimony of the ME, Stuart Gitlow, M.D.
("Dr. Gitlow"), who reviewed the entire record, observed
Plaintiff, and testified at the three hearings.  (R. at 14, 395-
400, 411-15, 448-54, 455-56, 465-67)

The Court of Appeals for the First Circuit has recognized
that the assessment of a non-examining medical expert may, in
some circumstances, alone constitute substantial evidence.  See
Berrios Lopez v. Sec'y of Health & Human Servs., 951 F.2d 427,
431 (1st Cir. 1991)(citing Tremblay v. Sec'y of Health & Human
Servs., 676 F.2d 11, 13 (1st Cir. 1982)(affirming the Secretary's
adoption of the findings of a non-testifying, non-examining
physician and permitting those findings by themselves to
constitute substantial evidence, in the face of a treating
physician's conclusory statement of disability)); id. ("In a
related context we have held that the testimony of a non-
examining medical advisor ... can alone constitute substantial
evidence, depending on the circumstances."); see also Keating v.
Sec'y of Health & Human Servs., 848 F.2d 271, 275 n.1 (1st Cir.
1988)("It is within the [Commissioner's] domain to give greater
weight to the testimony and reports of medical experts who are
commissioned by the [Commissioner]."); Coggon v. Barnhart, 354
F.Supp.2d 40, 54 (D. Mass. 2005)("The Commissioner may also place
greater weight on the report of its medical expert.")(citing
Keating, 848 F.2d at 275 n.1; Lizotte v. Sec'y of Health & Human

Servs., 654 F.2d 127, 130 (1st Cir. 1981)); Social Security
Ruling ("SSR") 96-6p, 1996 WL 374180, at *3 (S.S.A.)("In
appropriate circumstances, opinions from State agency medical and
psychological consultants and other program physicians and
psychologists may be entitled to greater weight than the opinions
of treating or examining sources."). "State agency medical and
psychological consultants and other program physicians and
psychologists are highly qualified physicians and psychologists
who are also experts in Social Security disability evaluation."
20 C.F.R. § 404.1527(f)(2)(i) (2009); see also SSR 96-6p, 1996 WL
374180, at *2 ("State agency medical and psychological
consultants are highly qualified physicians and psychologists who
are experts in the evaluation of the medical issues in disability
claims under the Act.").

Moreover, the ALJ is not required to accord controlling
weight to the opinions of treating physicians.  See 20 C.F.R. §
404.1527(d)(2);[4] see also SSR 96-2p, 1996 WL 374188, at *2

---

[4] Section 404.1527(d)(2) states in relevant part:

Generally, we give more weight to opinions from your treating
sources ....  If we find that a treating source's opinion on
the issue(s) of the nature and severity of your impairment(s)
is well-supported by medically acceptable clinical and
laboratory diagnostic techniques and is not inconsistent with
the other substantial evidence in your case record, we will
give it controlling weight.  When we do not give the treating
sources's opinion controlling weight, we apply the factors
listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section,
as well as the factors in paragraphs (d)(3) through (d)(6) of
this section in determining the weight to give the opinion.

20 C.F.R. § 404.1527(d)(2) (2009).  Section 404.1527(e) provides in
relevant part that:

Opinions on some issues, such as the examples that
follow, are not medical opinions, as described in
paragraph (a)(2) of this section, but are, instead,
opinions on issues reserved to the Commissioner because
they are administrative findings that are dispositive of
a case; i.e., that would direct the determination or

8

(S.S.A.)("It is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record."). Rather, the ALJ must consider the following factors in determining the weight given to a medical source's opinion: 1) the existence of an examining relationship; 2) the existence of a treating relationship (including the length, nature and extent thereof); 3) the supportability of the opinion; 4) the consistency of the opinion with the record as a whole; 5) the specialization of the source; and 6) any other factors which the claimant or others bring to the adjudicator's attention. See 20 C.F.R. § 404.1527(d)(2)-(6).

The ALJ afforded less probative weight to the opinions of Dr. Gutierrez and Ms. Saboya. (R. at 22) It is clear from the ALJ's opinion that she evaluated the medical opinions according to the factors listed in 20 C.F.R. § 404.1527(d)(2)-(6). First, the ALJ found, based on the testimony of the ME, (R. at 22) ("Dr. Gitlow opined that the record did not support the debilitating symptoms alleged by the claimant."); see also (R. at 18-19), and

decision of disability.

> (1) *Opinions that you are disabled.* We are responsible for making the determination or decision about whether you meet the statutory definition of disability. In so doing, we review all of the medical findings and other evidence that support a medical source's statement that you are disabled. A statement by a medical source that you are "disabled" or "unable to work" does not mean that we will determine that you are disabled.
>
> ....

20 C.F.R. § 404.1527(e).

9

the evidence of record, (id.)("the medical evidence demonstrates that this degree of severity was not supported by the record"), that Dr. Gutierrez's and Ms. Saboya's assessments were not supported by clinical findings, see SSR 96-2p, 1996 WL 374188, at *2.  The ALJ additionally noted that Plaintiff "denied significant psychiatric symptoms on several occasions, and the record does not contain ongoing significant objective abnormal mental status findings."  (R. at 22)  For example, the ME testified that:

> [H]ere we have several years worth of the Claimant complaining of depressive symptoms and anxiety symptoms, and the doctor writing down at times that the patient is complaining of these symptoms.  At other times he doesn't even write that down.   And then there's no -- there's nothing in the objective section which would be his examiner['']s notes.   So there's no medical support for the patient's complaints.

(R. at 398);[5] see also (id.)("[T]he record reflects consistently the Claimant's subjective perspective.").

Second, the ALJ found that the RFC assessments by Dr.

---

[5] The ME's testimony refers to Dr. Gutierrez's  reports, which indicate that Plaintiff denied psychiatric symptoms on numerous occasions, (R. at 152, 169, 175, 178, 179, 183, 187, 189, 295, 299, 303, 309, 311, 313, 315, 317, 319, 324, 326, 328, 370), despite the fact that her chief complaints on most of those days were depression and anxiety, (R. at 169, 175, 178, 183, 189, 299, 309, 311, 313, 315, 317, 319, 324, 326, 328, 370), as was discussed at the hearings on November 2, 2006, (R. at 266), March 7, 2007, (R. at 420-21), and September 19, 2007, (R. at 396-97, 411-12).  The ME speculated that Dr. Gutierrez could inadvertently have neglected to change that portion of the computer-generated notes, (R. at 411), but ultimately concluded by stating that in the March 5, 2007, letter, when asked to clarify the inconsistency, Dr. Gutierrez "didn't simply say, oh, that's just the electronic medical record system bringing everything forward.   That's not what I meant to put in it.   He didn't say that."  (R. at 412)  Nor did Dr. Gutierrez provide any other explanation.  Given the fact that that phrase appears repeatedly in the medical records, the ME indicated that "[t]he saying in medicine is, if it's not in the chart, it didn't happen.   And the reverse is true too.  Which is, if it is in the chart, then that's the truth.   So I can't do anything more than speculate."  (R. at 412)

Gutierrez and Ms. Saboya were inconsistent with other evidence in the record as a whole.  (R. at 22); see also 20 C.F.R. § 404.1527(d)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.").  Specifically, the ALJ found that Dr. Gutierrez's assessments of March 16, 2005, August 31, 2006, and March 5, 2007, and his letter also dated March 5, 2007, and Ms. Saboya's assessment of September 5, 2007, all of which indicated that Plaintiff had moderately severe to severe impairment of function in her daily activities, social functioning, and ability to concentrate and persist at tasks and that Plaintiff was unable to engage in sustained competitive employment,[6] were inconsistent with the record.  (R. at 22)  For example, the ME testified that Dr. Gutierrez's assessment was inconsistent with his treatment notes.  (R. at 467)  This testimony is supported by the record.[7]

---

[6] The ALJ was not required to accept the sources' opinions that Plaintiff was unable to engage in sustained competitive employment. See 20 C.F.R. § 404.1527(e); see also SSR 96-5p, 1996 WL 374183, at *5 (S.S.A.)(noting that opinions that claimant is disabled or unable to work are issues reserved to the Commissioner and, even when offered by a treating source, are not entitled to controlling weight or given special significance).

[7] As one example, the ME testified that "suddenly in December of 2005 severe major depression [was] added to the list of diagnoses." (R. at 451); see also (R. at 318).  Yet, there is no indication in the treatment notes of December 30, 2005, the date the diagnosis first appeared, of any change in Plaintiff's condition.  Dr. Gutierrez commented that day that Plaintiff "[f]eels otherwise OK today, since she bough[t] a puppy. ...  Still under much stress, but feels the medications are helping her."  (R. at 317)  His notes from Plaintiff's prior visit, on December 8, 2005, indicate that she "[h]as been status quo.  Still under much stress.  Has not had opportunity to sell her house yet."  (R. at 315)  The same is true for the diagnosis of depression, psychosis, severe, on December 12, 2006, (R. at 373), as the ME noted, (R. at 398).  On that date Dr. Gutierrez's notes reflect that Plaintiff "[h]as bee[n] having ok [sic].  Has gained a little bit of weight.  No other particular comp[la]ints."  (R. at 372)  On her previous visit, on September 22, 2006, there was no mention of depressive symptoms, although Plaintiff's chief complaint was depression.  (R. at 370)  Thus, the diagnoses are inconsistent with

11

Similarly, Ms. Saboya's treatment notes do not reflect moderately severe to severe impairment of function.  (R. at 344-67)  The ALJ observed that Dr. Gutierrez's and Ms. Saboya's treatment notes demonstrate that Plaintiff's condition improved with medication and counseling, (R. at 21), a point confirmed by their notes[8] and Plaintiff's own testimony, (R. at 433).  Regarding Dr. Gutierrez's letter of March 5, 2007, in which he stated that "although [Ms. Gomes'] mental and cognitive abilities are normal, she suffers from severe incapacitative anxiety and depression for which she is treated with monthly visits and medication," (R. at 376), Dr. Gitlow testified that "the two statements are inconsistent with one another.  If you have incapacitating anxiety and depression, then there's something really wrong mentally and cognitively. ...  It doesn't make any sense."  (R.

the doctor's own treatment notes.

[8] Examples include Dr. Gutierrez's notes of September 30, 2004, (R. at 145) ("Has been doing well with psychotherapy and medications."); April 22, 2005, (R. at 299) ("Has been under psychotherapy with Ms. S[a]boya.  She has been helpful ...."); May 20, 2005, (R. at 303) ("Doing much better on the new doses of lexapro. Feels otherwise ok now.  Avinza working very well.  And is seeing Ms. S[a]boya and doing well with her psychotherapy.  Only complaint is 'dizziness.'"); June 21, 2005, (R. at 307) ("Saw Deborah S[a]boya[] of clinical social work.  Working out well with her."); July 26, 2005, (R. at 309) ("Feels ok, status quo.  Still working closely with psychotherapy."); December 30, 2005, (R. at 317) ("[F]eels the medications are helping her."); February 10, 2006, (R. at 324) ("Has been doing well now on current regimen.  Her medications are working ...."); March 10, 2006, (R. at 326) ("Is doing ok, but continues to have pain and depression which are controlled with current medical treatment."); and October 31, 2006, (R. at 368) ("Continues to do fairly well on current medication regimen.  Is very anxious right now due to an] upcoming disability hearing, but overall is doing well."). Ms. Saboya indicated: on May 5, 2005, that Plaintiff "[r]eports depression ↓.  Sleeping better.  Has been getting out of house more," (R. at 350); on May 17, 2005, that Plaintiff "[a]ppears less depressed.  Has been more motivated and is sleeping better," (R. at 351); on June 7, 2005, that Plaintiff "presented looking much cheerier, did nails, dressed up.  Sleeping better," (R. at 354); and on July 12, 2005, that Plaintiff "reports less stress in relationship. Has been seeing grandchildren.  Depression ↓," (R. at 359).

at 397)  It is the ALJ's responsibility to resolve conflicts in
the evidence.  See Irlanda Ortiz v. Sec'y of Health & Human
Servs., 955 F.2d 765, 769 (1st Cir. 1991)("[T]he resolution of
conflicts in the evidence is for the [Commissioner], not for the
courts."); Evangelista v. Sec'y of Health & Human Servs., 826
F.2d 136, 141 (1st Cir. 1987)("Conflicts in the evidence are,
assuredly, for the [Commissioner]--rather than the courts--to
resolve.").

Third, the ALJ was aware of the fact that Dr. Gutierrez was
a treating source and that he saw Plaintiff approximately every
month, based on the ME's hearing testimony.  (R. at 466)  In
addition, the hearing transcript from the March 7, 2007, hearing
reflects that the ALJ ascertained that Dr. Gutierrez was a
primary care physician and not a psychiatrist.  (R. at 17, 421)
His specialty is internal medicine.  (R. at 91); see also 20
C.F.R. § 404.1527(d)(5) ("We generally give more weight to the
opinion of a specialist about medical issues related to his or
her area of specialty than to the opinion of a source who is not
a specialist.").

To the extent that Plaintiff relies on Ms. Saboya's opinion
as a treating source, her opinion is entitled to less weight than
those of acceptable medical sources because she is a licensed
social worker and is, therefore, not considered an acceptable
medical source.  See 20 C.F.R. § 404.1513(a) (2009) (listing
acceptable medical sources).[9]  An ALJ may not simply ignore the

_____

[9] Section 1513(a) lists acceptable medical sources as: licensed
physicians (medical or osteopathic), licensed or certified
psychologists, licensed optometrists, licensed podiatrists, and
qualified speech-language pathologists.  20 C.F.R. § 404.1513(a).
"Other sources" include "[m]edical sources not listed in paragraph (a)
of this section (for example, ... therapists ...)".  20 C.F.R. §
1513(d)(1).  "Opinions from these medical sources, who are not
technically deemed 'acceptable medical sources' under our rules, are
important and should be evaluated on key issues such as impairment
severity and functional effects, along with the other relevant

opinion of a source who is not an acceptable medical source, but must consider that evidence utilizing the factors listed in 20 C.F.R. § 404.1527(d)(2)-(6).  See SSR 06-03p, 2006 WL 2329939, at *2-3 (S.S.A.).  Here, the ALJ properly considered Ms. Saboya's assessments before deciding to afford limited weight to her opinion.  (R. at 22)  In fact, the hearing transcript of November 2, 2006, reveals that the ALJ continued the hearing in order to allow Plaintiff to obtain Ms. Saboya's treatment notes, which were not initially submitted with the application.  (R. at 463, 467-68)  The ALJ stated that the treatment notes were necessary to develop the record in order to make a decision.  (R. at 468); see also (R. at 469)("[I]t's to your benefit that I know what's going on in your record.").

In contrast to Plaintiff's treating sources, the non-examining psychiatrist and psychologist, Dr. Killenberg and Dr. Clifford, provided assessments dated September 16, 2004, and June 6, 2005, respectively, in which they opined that Plaintiff had mild restriction of her daily activities and moderate impairment of her social functioning, her ability to deal with co-workers and the general public, and her ability to concentrate and persist at tasks.  (R. at 22, 107-16, 135-37, 237-53)  Plaintiff argues that the ALJ's reliance on the opinions of the non-examining physicians and the ME was unjustified.  According to Plaintiff:

> The medical expert who was present at all three hearings was never asked his opinions of Ms. Gomes' functional limitations.  The only medical opinions of record, therefore, that supported the ALJ's findings were those of the non-examining state agency psychologists.  Those opinions, however, were given in September of 2004 and June of 2005, one three years and the other two years and four months before the ALJ's decision.  Neither had seen any of the treatment notes or opinion evidence from the

evidence in the file."  SSR 06-03p, 2006 WL 2329939, at *3 (S.S.A.).

plaintiff's therapist or heard the plaintiff's testimony.

Plaintiff's Mem. at 10.   Plaintiff argues that "the state agency opinions were based on a 'significantly incomplete record' and should therefore not be considered substantial evidence to support the ALJ's decision."   Plaintiff's Mem. at 10 (citing Alcantara v. Astrue, 257 Fed. Appx. 333)(1st Cir. 2007)).

As an initial matter, the Court notes that Plaintiff was represented by counsel at the three hearings and counsel could have pursued any line of inquiry she felt had not been adequately covered, including asking the ME about Plaintiff's functional limitations.   See Matta v. Sec'y of Health & Human Servs., 806 F.2d 287, 290 (1st Cir. 1986)("Claimant was represented by ... counsel at the hearings.   Counsel had the opportunity to present whatever testimony he wished."); cf. Pearson v. Fair, 808 F.2d 163, 166 (1st Cir. 1986)("[A] party cannot sit silently by, await the entry of judgment, and only then (having seen the result and having been disappointed thereby) bemoan the court's failure to take evidence.").   Moreover, the ME did, in fact, testify as to Plaintiff's limitations, albeit briefly:

> "[T]he only thing I have that truly reflects the level of symptoms that the Claimant expresses today is the [consultative evaluation] of 2004, the letter that her primary care doctor writes in 2007, and her own testimony.   Looking at those items, the Claimant would meet a listing from the perspective of anxiety, with the difficulty in social functioning, concentration, persistence, and pace.   Looking at the medical record itself and ignoring those three items, she does not meet the listing.

(R. at 454); see also (R. at 397-98)(noting Dr. Gutierrez's letter stating that cognitively Plaintiff was "okay" and that, other than Dr. Sullivan's report, there was nothing in the record which evidenced mental and cognitive difficulties); (R. at 456) (responding affirmatively to ALJ's question whether ME would be

15

swayed towards believing Plaintiff met the listing if ALJ accepted Plaintiff's testimony as credible).  The consultative examination to which the ME refers was performed by James K. Sullivan, M.D. ("Dr. Sullivan"), at the request of Plaintiff's counsel.  Plaintiff does not appear to challenge the ALJ's determination to afford less probative weight to his assessment. (R. at 22); see also Plaintiff's Mem. at 9-10.  The letter referenced is the March 5, 2007, letter from Dr. Gutierrez, (R. at 376), regarding which the ME testified that "the two statements are inconsistent with one another.  If you have incapacitating anxiety and depression, then there's something really wrong mentally and cognitively. ...  It doesn't make any sense."  (R. at 397)  With respect to  Plaintiff's testimony, the Court discusses the ALJ's credibility finding in the next section.  See Discussion section II. infra at 19-23.

As for Plaintiff's argument that "the state agency opinions were based on a 'significantly incomplete record ...,'" Plaintiff's Mem. at 10, because they provided their reports in September 2004 and June 2005, see id., the Court is unpersuaded. The Alcantara case, which Plaintiff cites, is distinguishable because in that case the ALJ relied exclusively on the opinion of a reviewing physician, who had considered only the first third of the record and did not review reports from therapists or other treating sources.  See 257 Fed. Appx. at 334.  Further, the ALJ in Alcantara had failed to consider a significant deterioration of the plaintiff's condition subsequent to the reviewing physician's report.  See id.  Here, by contrast, two non-examining physicians reviewed at least some of the treatment notes from Dr. Gutierrez, (R. at 137, 253),[10] as well as Dr.

_____

[10] Although Dr. Clifford does not specifically state that he reviewed Dr. Gutierrez's notes, (R. at 253), as had Dr. Killenberg, (R. at 137), presumably Dr. Clifford also saw those notes as his

Sullivan's report, and provided detailed explanations for their findings.  See Berrios Lopez, 951 F.2d at 431 (finding reviewing physicians' reports constituted substantial evidence where one report contained "more in the way of subsidiary medical findings to support [physician's] conclusions concerning residual functional capacity than is customarily found in the reports of consulting, non-examining physicians" and the other report "at least briefly mention[ed] all of claimant's alleged impairments and state[d] medical conclusions as to each.").  Moreover, Plaintiff overlooks the fact that the ME read the entire record, (R. at 395, 448), summarized the evidence pertaining to Plaintiff's depression and anxiety at length, (R. at 396-99, 450-52, 465-66), and reached a conclusion consistent with the assessments of the non-examining sources, (R. at 107-16, 135-37, 237-53, 454).[11]

In addition, the ALJ in Alcantara had failed to consider a significant deterioration of the plaintiff's condition subsequent to the reviewing physician's report.  See id.  A review of the

---

assessment was submitted subsequent to that of Dr. Killenberg, (R. at 253).  Moreover, Dr. Gutierrez's August 2006 RFC assessment, (R. at 336-37), is identical to his March 2005 assessment, (R. at 231-32), which Dr. Clifford saw, (R. at 37).  The ME testified that Dr. Gutierrez's March 5, 2007, letter was internally inconsistent and did not make any sense.  (R. at 397)  Dr. Gutierrez's RFC assessment of the same date is consistent with the letter in that it reflects moderately severe to severe impairment in all areas of functioning. (R. at 377-78)

[11] While Plaintiff argues that the ALJ, as a lay fact-finder, lacks the expertise to make an RFC assessment, see Plaintiff's Mem. at 10 (citing Rivera-Figueroa v. Sec'y of Health & Human Servs., 858 F.2d 48 (1st Cir. 1988)), such argument is misplaced.  The ALJ neither made a medical conclusion nor substituted her own judgment for a medical opinion.  An RFC determination is an issue reserved to the Commissioner, see 20 C.F.R. § 404.1527(e)(2) (noting that the final responsibility for determining issues such as RFC is reserved to the Commissioner).  Further, the ALJ based her RFC finding on the assessments of the state agency reviewers and the testimony of the ME, (R. at 21-22), not on her own interpretation of medical evidence.

records in the instant matter reveals that there is one notable change in the medical records submitted subsequent to the reviewing physicians' reports.  This change is reflected in Dr. Gutierrez's treatment notes from December 12, 2006, and January 26, 2007, indicating a new assessment that Plaintiff suffers from "Depress Psychosis - Severe."  (R. at 373)  However, at the hearing on September 19, 2007, Plaintiff denied having any hallucinations or "problems with reality."  (R. at 395)  In addition, the ME testified that Dr. Gutierrez's assessments, which reflected the new diagnosis, were inconsistent with his treatment notes.  (R. at 467) ("This one indicates severe depressive disorder and anxiety with panic attacks, which is not consistent with his medical notes."); see also n.7.

Plaintiff also contends that "the ALJ appeared to recognize a need for an additional psychiatric evaluation at the hearing and the medical expert advised that such additional evidence would be helpful," Plaintiff's Mem. at 10, but that she "failed to obtain such evidence," id.  However, Plaintiff mis-characterizes the ALJ's statement.  At the first hearing, the ALJ stated that if Plaintiff's counsel could not obtain Ms. Saboya's treatment notes, the ALJ would subpoena them.  She continued:

> If that is not successful, then the only other thing I could see would be to send you for an evaluation, a psychiatric evaluation.  But that's a last resort because that's really not going to tell me what's been going on with you in the last couple of years.  So we're going to try to get the records first ....

(R. at 468)  The ALJ subsequently stated that she "may send you for an updated psychiatric evaluation," (R. at 457), and later repeated "I may or may not have a psychiatric evaluation," (R. at 458), after noting that she would first send Plaintiff for laboratory tests to determine whether an underlying physical condition could be causing her depression, (R. at 457).  The ALJ

18

was under no obligation to obtain such a psychiatric evaluation, and it was within her discretion to decline to do so.

The First Circuit has stated that:

> In most instances, where appellant himself fails to establish a sufficient claim of disability, the [Commissioner] need proceed no further. Due to the non-adversarial nature of disability determination proceedings, however, the [Commissioner] has recognized that []he has certain responsibilities with regard to the development of evidence and we believe this responsibility increases in cases where the appellant is unrepresented, where the claim itself seems on its face to be substantial, where there are gaps in the evidence necessary to a reasoned evaluation of the claim, and where it is within the power of the administrative law judge, without undue effort, to see that the gaps are somewhat filled—as by ordering easily obtained further or more complete reports or requesting further assistance from a social worker or psychiatrist or key witness.

Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991)(quoting Currier v. Sec'y of Health, Educ. & Welfare, 612 F.2d 594, 598 (1st Cir. 1980)).  Here, Plaintiff was represented by counsel at all three hearings, and there were no gaps in the record which needed to be filled in order for the ALJ to make a reasoned decision.[12]

The Court finds that the ALJ's reliance on the assessments of the state agency reviewing psychiatrist and psychologist, as well as the testimony of the ME, as opposed to those of Plaintiff's treating sources, is supported by substantial evidence in the record.  Accordingly, Plaintiff's first claim of error should be rejected.  I so recommend.

---

[12] As noted previously, the ALJ continued the first hearing in orrder to obtain Ms. Saboya's notes, stating that the treatment notes were necessary to develop the record in order to make a decision.  See Discussion section I. supra at 14; see also (R. at 463, 468).

## II. **The ALJ's credibility findings are supported by substantial evidence.**

Regarding Plaintiff's credibility, the ALJ found that:

> Although the Administrative Law Judge realizes that the claimant has experienced some degree of symptomatology and functional limitation, applying the standard set forth in 20 CFR [§] 404.1529, SSR's 96-3p and 96-7p and <u>Avery v. Secretary of Health and Human Services</u>, 797 F.2d 19 (1st Cir. 1986), it is not of sufficient severity or credible to the extent to persuade [her] that since said date the claimant has been incapable of performing work within the residual functional capacity set forth above.

(R. at 21)  Plaintiff argues that the ALJ's credibility findings are not supported by substantial evidence.  Plaintiff's Mem. at 10.

An ALJ is required to investigate "all avenues presented that relate to subjective complaints ...."  <u>Avery v. Sec'y of Health & Human Servs.</u>, 797 F.2d 19, 28 (1st Cir. 1986).  In addition, "whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record."  SSR 96-7p, 1996 WL 374186, at *2 (S.S.A.).  When assessing the credibility of an individual's statements, the ALJ must consider, in addition to the objective medical evidence, the following factors:

1. The individual's daily activities;
2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
3. Factors that precipitate and aggravate the symptoms;
4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
5. Treatment, other than medication, the individual receives or has received for relief of pain or

> other symptoms;
>
> 6.     Any measures other than treatment the individual
>        uses or has used to relieve pain or other symptoms
>        (e.g., lying flat on his or her back, standing for
>        15 to 20 minutes every hour, or sleeping on a
>        board); and
> 7.     Any other factors concerning the individual's
>        functional limitations and restrictions due to pain
>        or other symptoms.

SSR 96-7p, 1996 WL 374186, at *3; see also Avery, 797 F.2d at 29 (listing factors relevant to symptoms to be considered); 20 C.F.R. § 404.1529(c)(3) (2009) (same).  The ALJ's credibility finding is generally entitled to deference.  See Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192, 195 (1st Cir. 1987) (citing DaRosa v. Sec'y of Health & Human Servs., 803 F.2d 24, 26 (1st Cir. 1986)); see also Yongo v. INS, 355 F.3d 27, 32 (1st Cir. 2004)("[T]he ALJ, like any fact-finder who hears the witnesses, gets a lot of deference on credibility judgments."); Suarez v. Sec'y of Health & Human Servs., 740 F.2d 1 (1st Cir. 1984) (stating that ALJ is "empowered to make credibility determinations ...").

Plaintiff contends that the ALJ erred by failing to consider the Avery factors in assessing Plaintiff's subjective complaints. According to Plaintiff, "[t]he ALJ focused almost exclusively on the lack of objective findings in the record for [Plaintiff's] symptoms, which is contrary to the reasoning behind the aforementioned ruling and caselaw."  Plaintiff's Mem. at 11.  The Court disagrees.

The ALJ specifically listed the Avery factors in her decision.  (R. at 21)  After doing so, she stated that:

> Concerning the claimant's mental impairments, ... while
> the claimant alleges that she was forced to discontinue
> working in October 2003 due to severe anxiety and
> depression, which has left her unable to concentrate,
> deal with others or tolerate stress and Dr. Gutierrez,
> Ms. Sa[b]oya and Dr. Sullivan indicated that the

claimant's major depression was recurrent and severe and generalized anxiety was up to a severe level, the testimony of impartial medical expert Dr. Gitlow, who is a board certified psychiatrist, and the medical evidence, demonstrates that this degree of severity was not supported by the record as Dr. Gutierrez and Ms. Sa[b]oya's notes reflect that the claimant did well with medication and therapy, albeit with significant gaps in treatment (i.e., the claimant only had counseling from March 2005 to September 2005, in August/September 2006 and none thereafter),[13] it was reported that she denied significant psychiatric symptoms on several occasions, and the record does not contain ongoing significant objective abnormal mental findings (i.e., with the exception of Dr. Sullivan's one-time examination there was very limited evidence of same). Also, the claimant has acknowledged that she was capable of taking care of her personal needs, did some light housework and meal preparation, drove occasionally and cared for her young grandchildren every other Saturday and Sunday.

(R. at 21-22) (internal citations and footnotes omitted).

It is clear from the foregoing that the ALJ did not "focus[] almost exclusively on the lack of objective findings ...." Plaintiff's Mem. at 11. The ALJ considered Plaintiff's allegations of her symptoms, the functional limitations resulting therefrom, and her daily activities. (R. at 21-22) The ALJ found that Plaintiff's subjective complaints were inconsistent with other, substantial evidence in the record. See SSR 96-7p, 1996 WL 374186, at *5 ("One strong indication of the credibility

---

[13] The Court recognizes that the ALJ "must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." SSR 96-7p, 1996 WL 374186, at *7. However, the ALJ does not appear to have done so here. Although she mentioned the gaps in Plaintiff's therapy with Ms. Saboya, (R. at 21-22), the ALJ was well aware of Plaintiff's explanation for these gaps, namely lack of medical insurance, from Plaintiff's testimony at the hearings, (R. at 403-04, 433, 439-40, 463-64).

22

of an individual's statements is their consistency, both internally and with other information in the case record."). As previously noted, Courts should generally defer to an ALJ's credibility findings. See Frustaglia, 829 F.2d at 195 ("The credibility determination by the ALJ, who observed the claimant, evaluated his demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to deference, especially when supported by specific findings.")

Moreover, the transcripts from the hearings on March 7, 2007, and September 19, 2007, reflect that the ALJ thoroughly questioned Plaintiff regarding the required factors. See Frustaglia, 829 F.2d at 195 ("The ALJ thoroughly questioned the claimant regarding his daily activities, functional restrictions, medication, prior work record, and frequency and duration of the pain.")(internal citation omitted). She was asked about her work history, (R. at 405, 421-22, 435-36), her pain and other symptoms, (R. at 395, 406-07, 410, 424-25, 432, 437-38, 441-42, 448-49), precipitating and aggravating factors, (R. at 427, 434), medications, (R. at 400, 424, 426, 433, 464), treatment other than medication, (R. at 402-03, 424, 426, 433, 463-64), other measures taken, 426, 434, 439), her functional restrictions, (R. at 434, 437, 440-42), and her daily activities, (R. at 401-02, 404-05, 409-10, 426-32).

Based on the foregoing, the Court concludes that the ALJ's Avery analysis was adequate and that her credibility finding is supported by substantial evidence. See Frustaglia, 829 F.2d at 195 ("Although more express findings, regarding ... pain and credibility, than those given here are preferable, we have examined the entire record and their adequacy is supported by substantial evidence."). Therefore, Plaintiff's second claim of error should be rejected. I so recommend.

23

**Summary**

The Court finds that the ALJ's assessment of Plaintiff's RFC is supported by substantial evidence in the record.  The Court further finds that the ALJ's credibility analysis is adequate and is supported by substantial evidence in the record.

**Conclusion**

Based on the findings noted above, I recommend that Defendant's Motion to Affirm be granted and that Plaintiff's Motion to Reverse be denied.  Any objections to this Report and Recommendation must be specific and must be filed with the Clerk of Court within ten (10) days of its receipt.  <u>See</u> Fed. R. Civ. P. 72(b); DRI LR Cv 72(d).  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district court and of the right to appeal the district court's decision.  <u>See</u> <u>United States v. Valencia-Copete</u>, 792 F.2d 4, 6 (1st Cir. 1986); <u>Park Motor Mart, Inc. v. Ford Motor Co.</u>, 616 F.2d 603, 605 (1st Cir. 1980).


/s/ David L. Martin
DAVID L. MARTIN
United States Magistrate Judge
September 22, 2009